## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

**UNITED STATES OF AMERICA**

**v.**

**HAJI BAGCHO,**

**Defendant.**

**Crim. Action No.  06-00334 (ESH)**

---

## MEMORANDUM OPINION

Defendant Haji Bagcho has moved for reconsideration of this Court's order denying his motion for a new trial.  *See United States v. Bagcho*, 151 F. Supp. 3d 60 (D.D.C. 2015).  At his trial, the prosecution presented evidence that Bagcho ran a large heroin trafficking operation in Afghanistan, and the jury found him guilty of narcotics distribution and narcoterrorism.  *Id.* at 63-65.  The Court subsequently vacated his conviction on the narcoterrorism count as a result of a *Brady* violation, but it did not disturb the two drug convictions.  *Id.* at 76.  Bagcho now argues that the Court erred in denying his motion for a new trial as to these other counts, and he also makes a new claim that the government offered false testimony at trial.  (Def.'s Mot. Reconsideration, ECF No. 149.)  The Court will deny Bagcho's motion for reconsideration because the *Brady* violation was not material to the other counts of conviction, and the new claim is untimely.

## BACKGROUND

A grand jury indicted Bagcho on four counts: conspiracy to distribute one kilogram or more of heroin, intending or knowing that the heroin would be unlawfully imported into the

United States, in violation of 21 U.S.C. §§ 959, 963, and 960(b)(1)(A) (Count One); twice distributing one kilogram or more of heroin, intending or knowing that the heroin would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a)(1), 959(a)(2), and 960(b)(1)(A) (Counts Two and Three); and narcotics trafficking while funding terrorism, in violation of 21 U.S.C. §§ 960a, 841(a), and 841(b)(1)(A)(i) (Count Four). (Superseding Indictment, ECF No. 11.) At Bagcho's first trial, the jury could not reach a verdict. After his second trial, on March 13, 2012, a jury convicted him on Counts One, Two, and Four. (Verdict Form, ECF No. 78.) This Court's prior opinion describes the evidence presented at the second trial. *See Bagcho*, 151 F. Supp. 3d at 63-65.

More than three years after the verdict of guilty in his second trial, Bagcho filed a motion asking for a new trial. (Def.'s Mot. New Trial, ECF No. 105.) The government had notified defense counsel about its discovery of another government agency's records concerning Qari, who was an undercover informant and a government witness at trial. *Bagcho*, 151 F. Supp. 3d at 65. That agency had concluded, prior to Bagcho's trial, that Qari was not credible. *Id.* Bagcho's motion for a new trial argued that the government's failure to disclose this information before trial constituted a *Brady* violation. (Def.'s Mot. New Trial.) On December 17, 2015, this Court granted the motion in part, vacating Bagcho's conviction on Count Four. *Bagcho*, 151 F. Supp. 3d at 76. The Court found that the agency's credibility assessment may have been admissible at trial to impeach Qari for bias or to "undermine the reliability of the government's investigation and its sources." *Id.* at 68-73. But, after analyzing the potential impact of this impeachment evidence on each count, the Court held that the *Brady* violation undermined confidence in the verdict only as to Count Four. *Id.* at 75-76.

The Court did not disturb Bagcho's convictions on Counts One and Two, which were supported by "a wealth of evidence that had nothing to do with the DEA's careless vetting of Qari." *Id.* at 74-76.  The Court explained that Count One, the conspiracy conviction, was amply corroborated by the testimony of other witnesses and by physical evidence, including drug samples obtained by the DEA in controlled buys; heroin-production material seized from Bagcho's compound; taped conversations in which Bagcho discussed drug distribution to the United States and discussed working with other co-conspirators[1]; Bagcho's accounting ledgers[2]; and ledgers from Zahir Shah's *sarafi* shop.  *Id.* at 74.  Next, the Court explained that Count Two, the narcotics distribution conviction, was supported by recorded calls between Bagcho and an undercover informant saying the heroin will go to the United States; the ledger memorializing the transaction that was seized from Zahir Shah's stall; and the physical delivery to the DEA of 2 kilos of heroin that the undercover informant had purchased during a controlled buy.  *Id.* at 75.

On April 13, 2016, almost four months after the Court had denied the motion for a new trial as to Counts One and Two, Bagcho filed this motion for reconsideration.  (Def.'s Mot. Reconsideration.)  First, he argues that "when *Brady* evidence implicates the entire investigation, as it did here, it is material to all counts of conviction."  (*Id.* at 2.)  Second, he makes a brand new argument that the Court should grant a new trial because two government witnesses testified falsely that the person pictured in Government Exhibit 38 was Maulawi Kabir, a governor under

---

[1] Although Qari and Farid were working for the government at the time of their recorded calls with Bagcho, Bagcho mentioned during the conversations that other people were working with him.  (*See* Second Trial Tr. vol. 12, 250-51, March 7, 2012, ECF No. 128.)

[2] The Court's prior opinion erroneously stated that Bagcho's ledgers were found at his compound.  They were actually found at the neighboring compound of Fahrman Shah.  (*See* Second Trial Tr. vol. 12, 246; Second Trial Tr. vol. 11, 15-16, 22-26, March 6, 2012, ECF No. 127.)

the Taliban.  (*Id.* at 2-6.)  In response, the government argues that Bagcho may not ask the Court

to reconsider its interpretation of the materiality standard that it applied to the information about

Qari, that the Court properly applied precedent when it assessed the materiality of that

information, and that Bagcho's argument regarding Exhibit 38 is in fact a Rule 33 motion, which

was not timely filed.  (Gov.'s Opp., ECF No. 151.)

## DISCUSSION

## I.   THE GOVERNMENT AGENCY'S CREDIBILITY ASSESSMENT OF QARI

Bagcho has labeled his current motion a "motion for reconsideration" and claims that this

Court erred in determining that the *Brady* information regarding Qari was not material to all

counts of conviction.  (Def.'s Mot. Reconsideration at 1-2.)  The Court will assume that it can

consider this motion for reconsideration, but it will deny the motion on its merits.

Unlike the Federal Rules of Civil Procedure, neither the Federal Rules of Criminal

Procedure nor the Local Criminal Rules for this district provide for motions for reconsideration.

*United States v. Hong Vo*, 978 F. Supp. 2d 41, 47 (D.D.C. 2013); *United States v. Cabrera*, 699

F. Supp. 2d 35, 40 (D.D.C. 2010).  Nevertheless, judges in this district have assumed, without

deciding, that they may consider motions for reconsideration in criminal cases.  *Hong Vo*, 978 F.

Supp. 2d at 47; *Cabrera*, 699 F. Supp. 2d at 40; *United States v. Cooper*, 947 F. Supp. 2d 108,

109 (D.D.C. 2013).  This Court will do the same.

Judges in this district have used various standards of review when considering motions

for reconsideration in criminal cases.  In some cases, judges have adopted the "as justice

requires" standard of Rule 54(b) of the Federal Rules of Civil Procedure, which permits

reconsideration when a court has "patently misunderstood the parties, made a decision beyond

the adversarial issues presented, [or] made an error in failing to consider controlling decisions or

4

data, or [where] a controlling or significant change in the law has occurred." *Hong Vo*, 978 F.

Supp. 2d at 47-48 (quotation marks and citations omitted).  In other cases, judges have adopted

the standard from Rule 59(e) of the Federal Rules of Civil Procedure, under which a motion for

reconsideration need not be granted unless there is an "intervening change of controlling law, the

availability of new evidence, or the need to correct a clear error or prevent manifest injustice."

*Cabrera*, 699 F. Supp. 2d at 40-41 (quotation marks and citations omitted).  Rule 59(e) motions

must be filed within 28 days after the entry of judgment. Fed. R. Civ. P. 59(e).  Finally, some

judges have denied motions for reconsideration after considering the issues de novo, without

deciding on a standard of review.  *E.g.*, *Cooper*, 947 F. Supp. 2d 108; *United States v.*

*Thompson*, No. 07-153-08, 2007 WL 1954179 (D.D.C. July 5, 2007).  Because this Court can

deny Bagcho's motion for reconsideration based on a de novo review, it is unnecessary to decide

on the proper standard of review or the deadline for filing a motion for reconsideration.

Bagcho's motion for reconsideration claims that "when *Brady* evidence implicates the

entire investigation, as it did here, it is material to all counts of conviction," but he cites no case

to support that proposition.  (*See* Def.'s Mot. Reconsideration at 2.)  As the Court explained in its

prior opinion, controlling precedent directs that "the *Brady* factors must be assessed count by

count."  *United States v. Johnson*, 592 F.3d 164, 171 (D.C. Cir. 2010); *see also United States v.*

*Oruche*, 484 F.3d 590, 597 (D.C. Cir. 2007); *United States v. Lloyd*, 71 F.3d 408, 412-13 (D.C.

Cir. 1995).  Even when *Brady* information undermines "the reliability of the [government's]

investigation," its materiality depends on the strength of the "evidence remaining unscathed."

*Kyles v. Whitley*, 514 U.S. 419, 446, 451 (1995).

For example, the Ninth Circuit considered a case where "the fact that not one, but two

separate police reports contained an identical error as to a critical piece of evidence certainly

raise[d] the opportunity to attack the thoroughness, and even good faith, of the investigation."
*United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000).  Still, the court concluded that there
was no reasonable probability of a different verdict because "the prosecution introduced
significant evidence independent of the evidence withheld by the government, including the
confession of the defendant." *Id.* at 627.  To guide courts in evaluating the independence of
evidence, the Supreme Court has explained that "[w]hen, for example, the probative force of
evidence depends on the circumstances in which it was obtained and those circumstances raise a
possibility of fraud, indications of conscientious police work will enhance probative force and
slovenly work will diminish it." *Kyles*, 514 U.S. at 446 n.15.  Because the *Brady* material in
*Kyles* suggested that an informant might have planted the key physical evidence incriminating
the defendant and that the police accepted that evidence uncritically, the Court concluded that the
defendant's murder conviction could not stand. *Id.* at 445-49, 453.

As explained above, this Court has already identified "a wealth of evidence that had
nothing to do with the DEA's careless vetting of Qari," and that evidence provided ample
support for Bagcho's convictions on Counts One and Two. *Bagcho*, 151 F. Supp. 3d at 74-76.
Bagcho has made conclusory allegations that the *Brady* information about Qari undermines the
entire investigation, but the law does not permit such generalizations.  Instead, the Court
properly analyzed whether there was sufficient unscathed evidence to retain confidence in the
verdict on each count.

## II.  GOVERNMENT WITNESSES' IDENTIFICATION OF EXHIBIT 38

Bagcho also contends that he did not receive a fair trial because two government
witnesses testified falsely about the identity of the man pictured in Exhibit 38, undermining the
reliability of their testimony and further undermining the reliability of the government's

investigation as a whole.  (Def.'s Mot. Reconsideration at 2-6.)  This claim, however, was filed

beyond the time limits set forth in Rule 33 of the Federal Rules of Criminal Procedure.

Rule 33 permits a defendant to make a "motion for a new trial grounded on newly

discovered evidence," but it "must be filed within 3 years after the verdict or finding of guilty."

Fed. R. Crim. P. 33.  "[A] defendant may not add new arguments in support of a motion for [a]

new trial by including them in an amendment filed after the time under Rule 33 has expired."

*United States v. Custodio*, 141 F.3d 965, 966 (10th Cir. 1998).  The Seventh Circuit has

explained that "allow[ing] an amended or supplemental motion to relate back to the original date

would defeat the express language of the rule, and would create a back door through which

defendants could raise additional grounds for a new trial . . . ."  *United States v. Holt*, 170 F.3d

698, 703 (7th Cir. 1999).  As a judge in the Southern District of New York has noted, "Rule 33

does not provide an exception to its time limit for motions that relate to earlier motions."  *United

States v. Camacho*, 163 F. Supp. 2d 287, 294 (S.D.N.Y. 2001).  This Court agrees that "new

evidence . . . constitute[s] additional grounds" for a new trial and therefore defendants may not

avoid the time limits in Rule 33 by presenting new evidence in the guise of an amendment or a

motion for reconsideration.  *Id.* at 294 n.7.

Bagcho has attempted to do just that.  His original motion for a new trial said nothing

about witnesses' identifications of Exhibit 38.  (Def.'s Mot. New Trial.)  His current motion,

although styled as a "motion for reconsideration," introduces the entirely new claim that

government witnesses testified falsely about Exhibit 38, which defense counsel states is new

information that the defense obtained since the original motion.  (Def.'s Mot. Reconsideration at

2-6.)  The current motion was filed on April 13, 2016, more than four years after the guilty

verdict on March 13, 2012, and the three-year deadline cannot be circumvented by labeling this new argument as a motion for reconsideration.

Although the time limitations in Rule 33 are not jurisdictional, they are inflexible claim-processing rules. *Eberhart v. United States*, 546 U.S. 12, 13, 19 (2005). This means that they "assure relief to a party properly raising them." *Id.* at 19. In opposition to Bagcho's motion for reconsideration, the government raised the defense that Bagcho's new claim about Exhibit 38 was untimely under Rule 33. (Gov.'s Opp. at 14-15.) In reply, Bagcho argued that the government has waived its objection because the motion for reconsideration dates back to the motion for a new trial (i.e., June 5, 2015), and the government failed to object to that motion on timeliness grounds. (Def.'s Reply at 8.) Bagcho's waiver argument is senseless. His motion for a new trial did not mention his current claim regarding Exhibit 38. The government had no opportunity to object to the timeliness of that claim until Bagcho presented it in his motion for reconsideration. Because the government has properly raised the time limitation in Rule 33, the Court will deny as untimely the portion of Bagcho's motion addressing the identification of Exhibit 38.

The defense has no cause to complain about the Court's refusal to entertain its arguments about Exhibit 38 more than four years after the verdict. By the time of the first trial, defense counsel was already aware of potential problems with the identification of Exhibit 38 as Kabir. The man in Exhibit 38 wears an eye patch, but at the first trial, Qari testified that he had not known Kabir to have an eye problem. (Def.'s Mot. Reconsideration, Attachment 3, ECF No. 149-3; First Trial Tr. vol. 8, 41-42, Nov. 7, 2011.) Defense counsel pushed Qari to testify that the man pictured in Exhibit 38 was actually Mullah Omar, not Kabir. (*Id.*) At the second trial, Qari again testified that he had not known Kabir with an eye patch, and Colonel Shaheen did not

testify to knowing Kabir with an eye patch either.  (Second Trial Tr. vol. 7, 63-64, Feb. 29, 2012,

ECF No. 123; Second Trial Tr. vol. 9, 136, March 2, 2012, ECF No. 125.)  If defense counsel

believed that the identification of Exhibit 38 was important, counsel could have pursued these

concerns before the second trial.  The online article that defense counsel has offered to show that

Exhibit 38 actually pictured Ahmad Rateb Popal was published in 2009.  *Compare* Def.'s Mot.

Reconsideration, Attachment 4, ECF No. 149-4 *with* Aram Roston, *How the US army protects its*

*trucks – by paying the Taliban,* RAWA News (Nov. 13, 2009), http://www.rawa.org/temp/

runews/2009/11/13/how-the-us-army-protects-its-trucks-and-8211-by-paying-the-taliban.html.

Thus, the information that defense counsel describes as newly discovered was publicly available

before both of Bagcho's trials.  Furthermore, Bagcho's lawyers could have asked their own client

about whether Exhibit 38 showed Kabir or someone else.  There is nothing unfair about barring

defense counsel from raising this issue four years after trial, when the defense team was aware of

it and could have pursued it before trial.  Accordingly, the Court rejects Bagcho's new claim as

untimely.[3]

---

[3] Although it is unnecessary to reach the merits of Bagcho's new claim, the Court notes that it has serious doubts about the claim's viability.  A defendant making a *Napue* claim must show that (1) "false testimony was presented at trial," (2) "the government knew, or should have known, that the testimony was false," and (3) "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. Quinn*, 537 F. Supp. 2d 99, 107-08 (D.D.C. 2008) (quotation marks and citations omitted); *see Napue v. Illinois*, 360 U.S. 264, 271-72 (1959); *United States v. Agurs*, 427 U.S. 97, 103 (1976).  Qari's and Colonel Shaheen's identifications of Exhibit 38 as picturing Kabir were relevant only to Count Four, the narcoterrorism conviction that this Court has already vacated.  Excluding all testimony by Qari and Colonel Shaheen, there still remains substantial evidence corroborating the verdicts on Counts One and Two.  Therefore, even if Bagcho could demonstrate falsity and government knowledge through an evidentiary hearing, there is a serious question about whether he could satisfy the materiality requirement for a *Napue* claim.

## CONCLUSION

For the foregoing reasons, Bagcho's motion for reconsideration is denied.  A separate

Order accompanies this Memorandum Opinion.

/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date:   January 3, 2017