**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.     ) | Cr. No. 06-334 (ESH) |
| ) | |
| HAJI BAGCHO,   ) | |
| ) | |
| Defendant.  ) | |

**EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

Haji Bagcho, through counsel, respectfully requests this Court to order his compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) in light of his age (78), his multiple diagnoses of congestive heart failure, atrial fibrillation, coronary atherosclerosis, high blood pressure, and hyperlipidemia, which—in addition to his previous heart attack and previous stroke—put him at increased risk of contracting COVID-19 and increased risk of death or serious complications from the infection, and the length of time he has already served.

**BACKGROUND**

Haji Bagcho was indicted in November 2006. His first trial ended in a mistrial in November 2011, when the jury could not reach a unanimous verdict. His second trial ended in March 2012 in conviction on three of the four counts, for which he was sentenced in June 2012 to life imprisonment. The most serious of the counts (narco-terrorism) was vacated in 2015 after it was revealed that a U.S. government agency operating in Afghanistan had determined that the highly-paid star witness against Bagcho was a "fabricator" of information and all agencies were on notice not to use him, a fact that had not been disclosed to the defense. The government elected not to appeal or retry Bagcho on that count. At re-sentencing in 2017, the Court calculated the sentencing guideline range to

1

include acquitted and uncharged conduct and a two-level adjustment for possession of a firearm, and imposed sentence of 300 months' imprisonment. On appeal, the Court of Appeals ruled that the evidence was insufficient to support the firearms enhancement. Haji Bagcho was scheduled to be re-sentenced on March 18, 2020. After two postponements, the sentencing hearing is currently scheduled for June 8, 2020. The current guideline range is 235-293 months' imprisonment. Bagcho has asked for what is essentially a time-served sentence; ten years.

Haji Bagcho is 78 years old. He has been incarcerated for 135 months—more than 11 years. His spotless record in the Bureau of Prisons since the date of his sentencing has earned him 14 months' off his sentence thus far. Considering the time that Bagcho has served since January 25, 2009, and the good time credits he has earned since he was sentenced, he has served 149 months' imprisonment—12.41 years. Assuming he continues to receive all of the good time credits available to him, and if the Court imposes a within-Guideline sentence assuming a sentence, Haji Bagcho has 65-123 months remaining to serve. Given his risk of heart failure, heart attack, and stroke, he is not likely to survive a guideline sentence of 235-293 months' imprisonment and *he is very unlikely to survive infection with COVID-19.*

## **HAJI BAGCHO IS SERVIOUSLY ILL**

To say that Haji Bagcho is not a healthy man is a vast understatement. The records from the Bureau of Prisons reflect that he has had a heart attack *and* a stroke. *See* Exhibit A, D (noting previous "CVA"—cerebrovascular accident, or stroke); 2/11/20 PSR at ¶78. He is currently diagnosed with the following:

- coronary artery disease ("CAD");

2

- chronic systolic congestive heart failure (left ventricle of heart does not contract completely; heart cannot pump with enough force to push enough blood into circulation);

- residual ischemic cardiomyopathy EF (significantly impaired left ventricular function resulting from coronary artery disease);

- paroxymal atrial fibrillation (irregular heartbeat);

- LV apical aneurysm (a bulge or ballooning of a weakened area of the heart);

- moderately reduced RV systolic function (a predictor of sudden cardiac death);

- mildly dilated left atrium (indicator of high blood pressure); and

- low voltage in extremity leads (associated with chronic obstructive pulmonary disease).

*See* Exhibits A and B. Unsurprisingly given his age and ailments, he can no longer climb up and down from the top bunk, and cannot walk to the dining room without taking pain medication first. *See* Exhibit A of February 13, 2020 Re-Sentencing Memorandum, page 8. As of this past October, the most recent medical records available to undersigned counsel, Haji Bagcho is prescribed Apixaban (an anti-coagulant to reduce blood clotting and stroke in patients with atrial fibrillation), Atorvastatin (to decrease the amount of fatty substances in the blood to reduce the risk of heart attack and stroke), Carvedilol (to treat heart failure; used after a heart attack), Digoxin (to treat heart failure and abnormal heart rhythms), and Omeprazole and Ranitidine (to treat gastroesophageal reflux disease—GERD). *See* Exhibit C.

## APPLICABLE LEGAL PRINCIPLES

### A. ADMINISTRATIVE EXHAUSTION

18 U.S.C. § 3582(c)(1)(A) reads, in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all

>administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment….

Courts, including this Court, have agreed that the exhaustion of administrative remedies can be waived when seeking relief will be futile. In *United States v. Powell*, No. 94-cr-316-ESH, ECF No. 98 (D.D.C. Mar. 28, 2020), this Court found that where the inmate had not filed a compassionate release request to the warden of his BOP facility, the administrative exhaustion requirement was waived because it was futile since the defendant's open misdemeanor charge rendered him ineligible for home confinement—the BOP would deny any motion for compassionate release filed by the defendant. In *United States v. Malone*, 13-cr-231-ESH, ECF No. 229 (Apr. 27, 2020), this Court stated that

>[a]lthough a single legal standard has yet to emerge for cases arising under the relatively new language in § 3582(c)(1)(A), courts have waived exhaustion in a limited set of circumstances, such as when pursuing administrative remedies would be "futile," see, e.g., Joint Submission Regarding Defendant Ghorbani's Motion for Reduction of Sentence Pursuant to Compassionate Release at 2 n.1, *United States v. Ghorbani*, No. 18-0255 (D.D.C. Apr. 3, 2020) (citing cases), or where "irreparable injury would result unless immediate judicial review is permitted." [*United States v.*] *Jennings*, No. 18-cr-0017, [(D.D.C. Apr. 22, 2020)], slip op. at 3; see also, e.g., [*United States v.*] *Scparta*, [ No. 18-cr-0578], slip op. at 15 (excusing exhaustion because "waiting for [the defendant] to exhaust his remedies would both be futile and cause him irreparable harm"); see also Opp. at 15 (citing cases).

Haji Bagcho is in exactly the circumstance as the defendant in *Ghorbani*, where the defendant had been designated to a BOP facility, but had not yet been transported; he was still at the D.C. Jail. The government agreed, and the court found, that a request for compassionate release to the facility at which Mr. Ghorbani had been designated would have been futile. The government recently characterized that concession in a case before this Court, *United States v. Wheeler*, No. 19-

cr-85-ESH, ECF 61. Acknowledging that "in the compassionate release context, "courts have recognized that the exhaustion of administrative remedies can be waived when seeking relief will be futile," *id.* (citations omitted)," the government explained that the parties in *Ghorbani*

> reasoned that waiting for the BOP's response would be futile because the BOP could not consider a request by the defendant until he had arrived at his designated federal institution, the defendant's transport had been indefinitely delayed, and thus a determination of whether he was eligible for release through the BOP programs could not be made. *Id.*

That is precisely Haji Bagcho's circumstance. Haji Bagcho was previously held at USP Allenwood. On December 30, 2020, he was re-designated to USP McCreary. Before he could be transported to McCreary, he was brought to the District of Columbia area on a writ to be resentenced, and housed at the Rappahannock Regional Jail. Even if the writ was quashed, or even after he is re-sentenced on June 8, 2020, he will not be immediately transported to USP McCreary because the U.S. Marshals are not transporting inmates due to COVID-19.

Nevertheless, on May 12, 2020, undersigned counsel made a written request to the warden of USP McCreary on behalf of Haji Bagcho for compassionate release. On May 14, 2020, Associate Warden Christopher Mabe's responded just as the parties in *Ghorbani* predicted: USP McCreary "is unable to process a request for Reduction in Sentence/Compassionate Release regarding inmate Haji Bagcho, Reg. No. 29820-016 at this time. Inmate Bagcho has never been housed at USP McCreary and has only received a designation to our facility." To appeal this decision within the BOP would be futile; Haji Bagcho is in the same limbo as the defendant in *Ghorbani*.

### B. **EXTRAORDINARY AND COMPELLING FACTORS**

Section 3582(c)(1)(A) provides, in relevant part, that the Court "may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are

5

applicable, if it finds that—"

>    (i)    extraordinary and compelling reasons warrant such a reduction; or
>
>    (ii)   the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable guidance was issued before the passage of the First Step Act and has not been amended to account for the statutory changes to § 3582. Accordingly, courts have held that "the most sensible interpretation of the Sentencing Commission's guidance in light of Congress's recent statutory amendments is that 'the Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive.'" *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) (quoting *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *5 (D. Me. July 11, 2019)); *see also United States v. Beck*, No. 1:13-cr-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i).").

Tracking the language of the statute, the Guidelines suggest that a sentence reduction may be warranted if "the court determines that—"

>    (1)    (A)    extraordinary and compelling reasons warrant the reduction; or

6

>  (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> 
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> 
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

According to the Guidelines application notes, "extraordinary and compelling reasons exist" when, as relevant here, the defendant is (1) "suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required," *id*. appl. n. 1(A)(ii); or (2) "suffering from a serious physical or medical condition," or "experiencing deteriorating physical or mental health because of the aging process" "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id*. appl. n. 1(A)(ii). Extraordinary and compelling reasons also exist when "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." Id. appl. n. 1(B). Those factors are present here: Haji Bagcho is 78 years old, is experiencing a serious deterioration in his health, and has served at least 10 years of his term of imprisonment.

The Guidelines application notes further provide:

> [A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

7

*Id*. appl. n. 2. They also recognize that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction." *Id*. appl. n. 4. Thus, "[r]ead as a whole, the application notes suggest a flexible approach which considers all relevant circumstances." *Beck*, 2019 WL 2716505, at *8.[1]

Notably, the First Step Act "was enacted to further increase the use of compassionate release and . . . explicitly allows courts to grant such motions even when BOP finds they are not appropriate." *Beck*, 2019 WL 2716505, at *6. Indeed, by permitting defendants to file sentence reduction motions directly with the sentencing court, regardless of how or whether the BOP has weighed in, the First Step Act reflects Congress's aim to diminish the BOP's control over compassionate release. *See United States v. Cantu*, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019) (explaining that "defendants no longer need the blessing of the BOP to bring such motions").

## ARGUMENT

**I.    THIS COURT SHOULD GRANT HAJI BAGCHO COMPASSIONATE RELEASE BECAUSE HIS MULTIPLE CO-MORBIDITIES AND AGE COMBINE TO HEIGHTENED HIS RISK OF CONTRACTING COVID-19 AND SERIOUS COMPLICATIONS OR DEATH FROM COVID-19, AND HE HAS SERVED MORE THAN 10 YEARS**

Extraordinary and compelling reasons compel Haji Bagcho's compassionate release for four reasons. First, he is "suffering from a terminal illness (i.e., a serious and advanced illness with an

---

1    The BOP program statement on compassionate release is relevant only to the extent that its criteria are broader than those described in the Guidelines. *See* U.S.S.G. § 1B1.13, appl. n. 1(D) (instructing that the Director of the BOP may designate *additional* "extraordinary and compelling reason[s]"). It generally parallels the policies in the Guidelines. *See* PS 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) ("BOP Program Statement"), at pp. 4-7 (Jan. 17, 2019) (providing compassionate release consideration for inmates with "terminal" or "debilitated" medical conditions).

8

end of life trajectory)." U.S.S.G. § 1B1.13, appl. n. 1(A)(i). Second, he is "suffering from a serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." *Id.*at n. 1(a)(ii). Third, he is "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id*. appl. n. 1(B). Finally, the pandemic of the novel coronavirus that causes COVID-19, which especially dangerous to Haji Bagcho given his age and diseases, and is especially dangerous in prison settings, present extraordinary and compelling reasons for his compassionate release.

Haji Bagcho's age and serious, dangerous illnesses put him at heightened risk of contracting COVID-19, and death or serious complications if he does contract it. First, people who have coronary heart disease, high blood pressure, or who have had a previous stroke—all of which apply to Haji Bagcho—are at greater risk of *contracting* COVID-19.[2] Hypertension or coronary heart disease is present in 38% of COVID-19 patients.[3]

---

2   *See*   https://health.clevelandclinic.org/what-heart-patients-need-to-know-about-covid-19/. *See* https://www.dynamed.com/condition/covid-19-and-cardiovascular-disease-patients ("patients with preexisting cardiovascular disease may be more susceptible to COVID-19 infection"); https://anthc.org/wp-content/uploads/2020/04/COVID-19-Congestive-Heart-Failure-Management.-Dr.-David-Trowbridge-04.02.2020.pdf (patients with cardiovascular conditions "have a heightened risk for contracting COVID-19 and a worse prognosis).

3   *See* CDC, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditionshttps://www.ncbi.nlm.nih.gov/pmc/articles/PMC7138145/; Fei Zhou et al., *Clinical course and risk factors for mortality of adult inpatients with COVID-19 in Wuhan, China: a retrospective cohort study*, Lancet (March 11, 2020), tb. 1, https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(20)30566-3/fulltext

Second, once having contracted COVID-19, it is deadly in those with pre-existing heart disease. Harvard Professor Duane Pinto has reported that "[p]atients with cardiovascular disease, hypertension, obesity, and diabetes are at increased risk of a poor prognosis. In addition, patients with myocardial injury,"—patients like Haji Bagcho—"irrespective of cause, *have a poorer prognosis*."[4] As cardiologist and Harvard clinician Dara Lee Lewis reported,

> [s]omeone with pre-existing heart disease who becomes ill with COVID-19 may suffer a heart attack or develop congestive heart failure. This rapid worsening of cardiovascular health is likely due to a combination of the severe viral illness and its increased demands on the heart (fever causes rapid heart rate, for example), compounded by low oxygen levels due to pneumonia and increased propensity for blood clot formation. In addition to the increase in these heart problems, a more unusual condition called myocarditis has also been observed in COVID-19 patients.[5]

Fatality rates for patients with cardiovascular disease are 10.5%, "materially higher than the average population." Furthermore, COVID-19 *causes* damage to the heart in some patients.[6] Haji Bagcho already has congestive heart failure. If he contracts COVID-19, the result likely will likely be devastating.

On top of his heart disease, Haji Bagcho's age makes him the most likely to die from

---

4   https://www.uptodate.com/contents/coronavirus-disease-2019-covid-19-myocardial-infarction-and-other-coronary-artery-disease-issues;

5   https://www.health.harvard.edu/blog/how-does-cardiovascular-disease-increase-the-risk-of-severe-illness-and-death-from-covid-19-2020040219401

6   Lenny Bernstein et al., *Coronavirus destroys lungs. But doctors are finding its damage in kidneys, hearts and elsewhere,* Washington Post (Apr. 15, 2020), https://www.washingtonpost.com/health/coronavirus-destroys-lungs-but-doctors-are-finding-its-damage-in-kidneys-hearts-and-elsewhere/2020/04/14/7ff71ee0-7db1-11ea-a3ee-13e1ae0a3571_story.html.

COVID-19. Bagcho is 78 years old.[7] The scientific data is unequivocal: the elderly are at the highest risk of dying from Covid-19. The CDC reports that "8 out of 10 deaths reported in the U.S. have been adults 65 years old and older."[8] Haji Bagcho's advanced age makes the risk of him dying in prison of COVID-19 palpable.

Social distancing and hand washing are the only known ways to prevent its rapid spread; there is no vaccine and no known cure or antiviral treatment for COVID-19. But even if Haji Bagcho were able to wash his hands assiduously in custody, he simply cannot socially distance in jail or prison. Like cruise ships and nursing homes, jails and prisons are closed settings that have long been known to be associated with high transmission of infectious diseases. The following chart illustrates the dangerousness of confinement:

---

[7] As the PSR states, Haji Bagcho was born February 20, 1942, making him 78 years old. Inexplicably, the BOP incorrectly states that he was born in February, 1954, making him 66 years old. It is unclear how the BOP chose that year, since Haji Bagcho and his family report his birth year as 1942, and birth certificates were not issued at that time in Afghanistan.

[8] *Coronavirus Disease 2019, Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fhigh-risk-complications%2Folder-adults.html. *See* https://anthc.org/wp-content/uploads/2020/04/COVID-19-Congestive-Heart-Failure-Management.-Dr.-David-Trowbridge-04.02.2020.pdf (reporting 8% death rate among U.S. patients 70-79 years of age)



Earlier this week Dr. Anthony Fauci reported that he expects cases to "spike" in prisons going forward. https://www.nytimes.com/2020/05/11/health/coronavirus-second-wave-infections.html. Within the BOP, the growth has *already* been exponential, and other jails and prisons are no different:

12



Furthermore, these numbers are undoubtedly an undercount. In prisons and jails, just as in the rest of the United States, there are not enough tests.[9] The virus is spread by asymptomatic and presymptomatic individuals, so that those exhibiting no symptoms may pass it along to others.[10] And there is simply inadequate personal protective equipment in prisons and jails.[11] Thus, no

---

9  *See* Katie Thomas, *The Latest Obstacle to Getting Tested? A Shortage of Swabs and Face Masks,* N.Y. Times (Mar. 18, 2020), https://www.nytimes.com/2020/03/18/health/coronavirus-test-shortages-face-masks-swabs.html; Lauren Webber et al., *Testing Swabs Run In Short Supply As Makers Try To Speed Up Production*, NPR (Mar. 18, 2020), https://www.npr.org/sections/health-shots/2020/03/18/817801222/testing-swabs-run-in-short-supply-as-makers-try-to-speed-up-production; Matthew Perone, *US virus testing faces new headwind: Lab supply shortages*, ABC News (Mar. 21, 2020); Robert P. Baird, *Why Widespread Coronavirus Testing Isn't Coming Anytime Soon*, The New Yorker (Mar. 24, 2020), https://www.newyorker.com/news/news-desk/why-widespread-coronavirus-testing-isnt-coming-anytime-soon; Steven Mufson et al., *The scramble for the rapid coronavirus tests everybody wants*, Washington Post (Apr. 1, 2020), https://www.washingtonpost.com/health/2020/04/01/scramble-rapid-coronavirus-tests-everybody-wants/.

10  Apoorva Mandavilli, *Infected but Feeling Fine: The Unwitting Coronavirus Spreaders*, N.Y. Times (Mar. 31, 2020), https://www.nytimes.com/2020/03/31/health/coronavirus-asymptomatic-transmission.html.

11  *See, e.g,* Keegan Hamilton, *Sick Staff, Inmate Transfers, and No Tests: How the U.S. Is Failing Federal Inmates as Coronavirus Hits*, Vice (Mar. 24, 2020),

matter the commitment to safety on the part of the Rappahannock Regional Jail or the BOP or the D.C. Department of Corrections, the fact remains that the close quarters of jails and prisons, the inability to employ effective social distancing measures, the use of shared toilets, sinks, and showers, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely. In fact, the CDC explains that the risk of exposure to COVID-19 increases in "crowded, closed-in settings with little air circulation if there are people in the crowd who are sick," and recommends that people who are at high risk for severe illness avoid crowds, "stay home as much as possible to further reduce your risk of being exposed," and "avoid touching high-touch surfaces."[12]

Indeed, realizing the danger of COVID-19 in detention facilities, courts all over the country, in various procedural postures, are acknowledging the uncontroverted evidence that it is safer for the entire community if inmates like Haji Bagcho, who are at high-risk of death or injury from the virus, and who do not pose any immediate danger to others, are released. *See, e.g., Karr v. Alaska*, 2020 WL 1456469, at *2 (Ct. of App. Alaska Mar. 24, 2020) (citations omitted) ("Incarcerating a defendant under conditions that do not permit compliance with widespread health directives designed to halt the spread of the virus poses significant health risks not only to other inmates and

---

https://www.vice.com/en_us/article/jge4vg/sick-staff-inmate-transfers-and-no-tests-how-the-us-is-failing-federal-inmates-as-coronavirus-hits; Joseph Neff & Keri Blakinger, *Federal Prisons Agency "Put Staff in Harm's Way" of Coronavirus,* The Marshall Project (Apr. 3, 2020), https://www.themarshallproject.org/2020/04/03/federal-prisons-agency-put-staff-in-harm-s-way-of-coronavirus.

12 *See* CDC, *Get Ready for COVID-19* (Mar. 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/get-ready.html & CDC, *Steps to Prevent Getting Sick* (Mar. 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/get-ready.html.

to correctional facility staff, but also to the rest of the public.").[13]

"These are not normal times[.]" *United States v. Gonzales*, 2020 WL 1536155, at *3 (E.D. Wash. Mar. 31, 2020) (granting compassionate release to 60-year old defendant with underlying health condition). The exponential infection rate of COVID-19 and high mortality rate for those of Haji Bagcho's age and with his conditions, coupled with the virtually certain inability of the Rappahannock Regional Jail, the BOP, and the D.C. Department of Corrections to address the surge in cases, make clear that these are just the kind of extraordinary and compelling circumstances that warrant a sentence reduction in this case.

Accordingly, the Court should exercise its discretion to order Haji Bagcho's immediate release from prison, at which time he will concede deportation and be deported back to Afghanistan.

---

13   *See also United States v. Underwood*, Case No. 8:18-cr-201-TDC, ECF No. 179 (Mar. 31, 2020) (encouraging release to furlough of elderly defendant in BOP custody because, even though no positive of COVID-19 in his facility, "there is significant potential for it to enter the prison in the near future"); *Xochihua-James v. Barr*, No. 18-71460 (9th Cir. Mar. 23, 2020) (unpublished) (*sua sponte* releasing detainee from immigration detention "in light of the rapidly escalating public health crisis"); *United States v Garlock*, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020) (citing "chaos" inside federal prisons in *sua sponte* extending time to self-surrender: "[b]y now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided"); *United States v. Perez*, 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should he contract COVID-19"); *United States v. Stephens*, 2020 WL 1295155, __F. Supp. 3d__ (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *In re Manrigue*, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) ("The risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail."); *In re Request to Commute or Suspend County Jail Sentences*, Docket No. 084230 (N.J. Mar. 22, 2020) (releasing large class of defendants serving time in county jail "in light of the Public Health Emergency" caused by COVID-19); *United States v. Matthaei*, 2020 WL 1443227, at *1 (D. Idaho Mar. 16, 2020) (extending self-surrender date by 90 days in light of COVID-19); *United States v. Barkman*, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020) (suspending intermittent confinement because "[t]here is a pandemic that poses a direct risk if Mr. Barkman . . . is admitted to the inmate population of the Wahoe County Detention Facility").

## II. HAJI BAGCHO IS NOT A DANGER TO THE COMMUNITY AND HIS CONTINUED INCARCERATION IS GREATER THAN NECESSARY TO ACCOMPLISH THE GOALS OF SENTENCING

The § 3553(a) factors also support compassionate release. Haji Bagcho has been significantly punished and is not a danger to the community. He has served most of his sentence in solitary confinement, all of it with serious illnesses, with no hope of a half-way house or other benefits that U.S. citizens receive. Thus, his sentence has been and will continue to be significantly more laborious than that served by most inmates, and further incarceration is greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2).

Haji Bagcho's age and his diseases, his understanding of the reach of the U.S. government's prosecution authority, and the fact that he has been absent from Afghanistan for more than 11 years, realistically foreclose a probability of recidivism in Afghanistan. He does not pose any significant risk to the community at this time. *See United States v. Muniz*, 2020 WL 1540325, at *2 ("Because of Defendant's serious medical conditions and the length of time already served [(approximately ten years)], the Court is persuaded that Defendant will not pose a threat to the community.").

## III. HAJI BAGCHO'S RELEASE PLAN

Upon his release, Haji Bagcho will enter deportation proceedings, which he will not contest. He will be deported to Afghanistan, where he will live with and be supported by his family.

## CONCLUSION

"People do not stop being human the day they are sentenced. Although some have made terrible choices or engaged in reprehensible behavior, the sentence they received for their crime did not include contracting COVID-19 and death. [14] For the foregoing reasons, Haji Bagcho

---

14   DA Rachael Rollins, *Statement of Suffolk County District Attorney Rachael Rollins on*

respectfully requests that this Court decide his motion on an emergency basis and that the Court grant his motion and order his immediate release.

        Respectfully submitted,

        A. J. KRAMER
        FEDERAL PUBLIC DEFENDER

           /s/
        _____

        SANDRA G. ROLAND
        Assistant Federal Public Defender
        625 Indiana Avenue, N.W.
        Washington, D.C. 20004
        (202) 208-7500

---

*today's hearing before the Supreme Judicial Court* (Mar. 31, 2020), https://www.suffolkdistrictattorney.com/press-releases/items/2020/3/31/statement-of-suffolk-county-district-attorney-rachael-rollins-on-todays-hearing-before-the-supreme-judicial-court.