```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
----------------------------X          PROOF, FIX LAWYERS@

UNITED STATES OF AMERICA


                    v.           Criminal Case 06-334-ESH

HAJI BAGCHO,

                    Defendant
----------------------------X
                                        Washington, D.C
                              Monday, June 8, 2020
                                      2:15 p.m.


           TRANSCRIPT OF VIDEO SENTENCING HEARING
         BEFORE THE HONORABLE ELLEN SEGAL HUVELLE
              UNITED STATES DISTRICT JUDGE
APPEARANCES:

For the Government: Jamie Brinkmeyer Perry, Esq.
                    Seth Michael Gilmore, Esq.
                    U.S. DEPT. OF JUSTICE
                    Criminal Division
                    145 N Street, NE
                    East Wing, Second Floor
                    Washington, DC 20530
                    (202) 307-3262


For the Defendant:  Sandra Gayle Roland, FPD
                    FEDERAL PUBLIC DEFENDER D.C.
                    625 Indiana Avenue, NW, Suite 550
                    Washington, DC 20004
                    (202) 208-7500
```
```
Court Reporter:     Lisa Walker Griffith, RPR
                    U.S. District Courthouse
                    Room 6507
                    Washington, D.C.  20001
                    (202) 354-3247
```

P R O C E E D I N G S

1

2    THE DEPUTY CLERK:  This is criminal case 06-334.

3  United States of America versus Haji Bagcho.

4    (The interpreter was sworn.)

5    THE COURTROOM DEPUTY:  I'm going to ask the

6  government counsel and defense counsel, in that order, to

7  please state your name for the record.

8    MS. PERRY:  Good afternoon, Jaime Perry for the

9  United States along with Seth Gilmore.

10    THE COURT:  Good afternoon.

11    MS. ROLAND:  Good afternoon, Sandra Roland on

12  behalf of Haji Bagcho.

13    THE COURT:  Good afternoon.  Mr. Bagcho is present

14  from Rappahonnock Jail.  The interpreter is interpreting for

15  him what we are saying here.

16    Before we start, I would like to put on the record

17  what I have reviewed for purposes of these proceedings.

18  Both a motion for compassionate release filed on behalf of

19  defendant, the government's response, and the reply from the

20  defense counsel.  As to sentencing, the Court has reviewed

21  the presentence report which has been updated.

22    Is Sherry Brandon on the call from probation?

23    MS. BRANDON:  Yes, Your Honor, this is Sherry

24  Brandon from the probation office.

25    THE COURT:  And also, anyone else on the phone

1    besides Sherry?  Lisa Griffith, our court reporter.  Anyone

2    else on the phone?

3            Okay.  For purposes of sentencing, I've reviewed

4    the presentence report,  the defendant's memorandum in aid

5    of sentencing or resentencing, the letter from Mr. Bagcho

6    which was filed on March 13, 2020, the government's response

7    and finally defendant's second supplemental memorandum in

8    aid of resentencing.

9            As I have already told defense counsel a few

10   moments ago, the government, in support of its opposition to

11   defendant's motion for compassionate release, attached an ex

12   parte addendum to the filing that contained confidential

13   information that the Court is not at liberty to disclose.

14           The Court does not intend to rely on this

15   information in terms of making any determination as to

16   sentencing or compassionate release.  Given that situation,

17   defense counsel has been given the opportunity to ask me to

18   remove myself from the case.  I do believe I can proceed

19   without any consideration of this information.  But it

20   cannot, according to the government, be disclosed.

21           So Ms. Roland, I realize this is hard for you to

22   figure out.  But if you want us to proceed, we're ready to

23   go.

24           MS. ROLAND:  Your Honor, you've been involved in

25   this case for eight years.  So it makes no sense.  We trust

1   you, we don't want you to recuse yourself.  I'm deeply

2   disturbed by this, for the government to taint the

3   proceedings now, when we're finally at the finish line, is

4   very disturbing.  I'd ask to know, at least have a general

5   representation about, what this is about or what it

6   concerns.

7           THE COURT:  I think the government has already

8   asked that they are not at liberty to discuss it.  But if

9   I'm not going to consider it, I don't know that we're going

10  to get anywhere debating with the government.  I wish that

11  -- in terms of sentencing I think the law is pretty clear.

12  But it was submitted in terms of compassionate release.  But

13  I realize that I'm treating them both at the same time.  So

14  I have chosen not to even consider it, and it will not

15  figure into my determination.

16          I would like, though, to proceed and make a

17  ruling.  Under our present situation, because of the

18  pandemic and the virus, we are not able to proceed in court

19  as we usually can.  So that we are now doing this by video

20  conferencing.  I want to make sure that we have the consent

21  of the defendant after he has consulted with counsel because

22  the Court is going to find that it's necessary in the

23  interest of justice to proceed by video conferencing.

24          Does the defendant agree with proceeding this way?

25          THE INTERPRETER:  He is saying that he is not

1    hearing very well, that there is a problem with the audio,

2    that he is not receiving the audio well and he cannot hear

3    what I am saying.

4            (There was a pause in the proceedings.)

5            THE INTERPRETER:  He is saying we have to go slow

6    because is not able to hear us as well as he should.  That's

7    why he does not understand what is going on.

8            THE COURT:  Okay.  What I have asked is whether he

9    agrees to proceed by video conferencing because we can't

10   have in-person court proceedings.

11           THE DEFENDANT:  Yes, I do.

12           THE COURT:  The Court finds that the sentencing

13   cannot be further delayed without serious harm to the

14   interest of justice.

15           I would like to take up the compassionate release

16   motion first.  The government has basically conceded --

17           THE DEFENDANT:  Thank you, Your Honor.  Thank you

18   very much.

19           THE COURT:  Okay. The compassionate release motion

20   under 18 USC 3582, in the government's opposition, they

21   agree that under the present COVID-19 pandemic, defendant's

22   chronic medical problems presents a serious physical or

23   medical condition that substantially diminishes his ability

24   to provide self care within the environment of a

25   correctional facility and from which he is not expected to

1    recover.

2          They have relied on (A)( 2)(I).   The defendant is

3    78 years old.  He has suffered from a heart attack, a

4    stroke.

5          Did he have a stroke in the institution,

6    Ms. Roland?

7          THE DEFENDANT:  Yes, I did.

8          THE COURT:  He has coronary heart disease,

9    congestive heart failure, atrial fibrillation, high blood

10   pressure and other serious medical problems and he takes a

11   host of medications.

12         When did he last see the doctor in an institution?

13         MS. ROLAND:  Your Honor, his last visit was

14   January of 2019.  We were both saying that his last visit

15   was January of 2019.

16         THE COURT:  Is that right; is that what the

17   interpreter heard?

18         THE INTERPRETER:  January the 19th, 19--

19         THE COURT:  Okay, of 2019.

20         Given the government's recognition, there are

21   extraordinary and compelling reasons that the virus, he is

22   at risk for contracting the virus and that it could well be

23   fatal.  But the Court will nonetheless deny the motion.  He

24   has been designated to a facility where only one inmate and

25   one staff member has been infected by the virus at McCleary

1    and he is now at Rappahonnock where, as far as I know, at

2    the end of May, there was only one staff member who had

3    contracted the virus.

4         Second of all, this statute presupposes that the

5    medical care that he would get in the institution, he could

6    have better medical care if he were released.  I find that

7    to be very difficult to accept.

8         First of all, upon release, he would be subject to

9    detention in an ICE detention facility pursuant to 8 USC

10   Section 1231.  It is hard to predict how long he would be

11   held but it certainly could be for a matter of months.  And

12   these facilities have far higher incidents, many of them do,

13   of COVID-19 than in the institutions, than BOP.

14        I also looked online and found that, upon release,

15   he would be returning to Afghanistan, which has been -- the

16   World Health Organization said it has one of the worst

17   health care systems in the world.  They have had a large

18   outbreak in Afghanistan.  There are 19,000 reported cases

19   and 300 deaths.  But that, everyone agrees, is an

20   understatement, that many people are not reported for either

21   having the virus or for fatalities.  And in the Kandahar

22   Province, at least as recently reported, they had 776 cases

23   of the virus and one death, and have only one hospital.

24        So in the Court's mind, he is not at greater risk

25   if he is staying in the institution and has their medical

care as opposed to being released to an ICE facility and eventually to Afghanistan.  The Court, therefore, denies the motion, Docket 193.

To proceed with sentencing, just some background, he was arrested I believe in May 14, 2009 and he has been held in custody ever since.  In 2012, he was sentenced to life.  Then the Court invalidated the Narco-Terrorism charge based on the government's disclosure regarding Qari, and at that point, he was sentenced to 300 months.  His release date will be January 10, 2031.  So that is the current state of affairs.

Then in 2020, the Court of Appeals found error insofar as the Court assigned a two point enhancement for gun possession.  Therefore, this matter has been remanded to this Court to resentence without the two points.

There has been a lot of discussion in the filings about the quantity of drugs and acquitted conduct.  Under D.C. Circuit precedent, the case is United States versus Hunter 809 F3d. 677, and United States versus Blackson, 709 F3d. 36, the Court is not in the position of sentencing Mr. Bagcho anew.  I can only consider facts or law that did not exist at the time that I last sentenced him.

So the Court will not recalculate the drug quantities.  I am still proceeding on not less than 10 and not more than 30 kilograms, and the Court is entitled to

1    consider acquitted conduct.

2              His petition for cert in the Supreme Court has

3    been denied.  And the Court's ruling on acquitted conduct

4    was upheld by the D.C. Circuit on appeal at page 1141.  So I

5    believe everybody agrees with those rulings, that the

6    offense level is 38, criminal history is one, and the

7    current guideline range is 235 months to 293.

8              Ms. Perry, do you agree to those figures?

9              MS. PERRY:  Yes, Your Honor.

10             THE COURT:  Ms. Roland?

11             MS. ROLAND:  Yes, with the caveat that we continue

12    to object to the use of the acquitted uncharged conduct.

13             THE COURT:  I'm not sure it is exactly uncharged

14    given the conspiracy.  But I will accept for purposes of

15    today, I think that both acquitted and uncharged would be

16    treated the same.  I don't know that I agree.

17             (Technical difficulties)

18             THE COURT:  I was saying that I did not agree that

19    we were relying on uncharged conduct, but that Ms. Roland's

20    objection, whether it be acquitted or uncharged, is

21    preserved for the record.

22             I then asked the parties if they agreed that the

23    offense level is 38, criminal history one, with a guideline

24    range of 235 to 293 months.

25             Ms. Perry agreed and Ms. Roland agreed.  Correct?

1          MS. PERRY:  Correct.

2          MS. ROLAND:  Correct.

3          THE INTERPRETER:  Your Honor, I did not get the

4    number of months.

5          THE COURT:  Okay.  The number of months, the

6    guideline range is 235 months to 293.  So the low end is

7    just slightly below 20 years.

8          I then said that the government has asked that I

9    sentence Mr. Bagcho to the high end, and I calculate that to

10   be an approximate release date of October 2030, and he would

11   be 88 at that time.

12         Mr. Bagcho, through counsel, has asked for time

13   served.  That would be 10 years -- well, the amount of time

14   that he has served to date is 11 years, four months and 14

15   days.

16         Now, Ms. Roland, you have made certain objections

17   to the PSR.  Should we go through those briefly so

18   Ms. Brandon knows what to correct?

19         MS. ROLAND:  Yes, thank you, Your Honor.

20         THE COURT:  The first one -- Ms. Brandon, can you

21   hear us?

22         MS. BRANDON:  Yes, I can.

23         THE COURT:  On page three he is now 78.  And

24   instead of saying he is cohabiting, he is legally married to

25   two women.  And also at three, it is technically correct, he

1    is not an illegal alien.  We brought him here.  So he is

2    here legally.

3              What is it called, Ms. Perry?

4              MS. PERRY:  I believe, I'm not certain, he may

5    have been paroled in for the purpose of these proceedings.

6              THE COURT:  Yes, I think so.

7              Is that right, Ms. Roland?

8              MS. ROLAND:  Yes, he was paroled.

9              THE COURT:  There are several paragraphs that have

10   been objected to, paragraphs 44 to 110, which include Qari's

11   testimony.  The Court never found that he was not credible.

12   The Court found that the defendant was deprived of the

13   opportunity to cross-examine certain aspects having to do

14   with the investigation.

15             The Court is not going to strike those portions.

16   Obviously the defense has made an objection and his

17   testimony is not used for purposes of sentencing or purposes

18   of calculating guidelines.  But we are not going to strike

19   everything he said.

20             The fifth objection -- so I'm denying objection

21   four and six.

22             Counsel is right, having to do with paragraph 42,

23   Ms. Brandon.  He is accountable for at least 10 kilograms

24   but not more than 30 kilograms.  Based on the Court of

25   Appeals' finding, he is not accountable for possession of a

1    weapon.

2            The last objection, paragraph 70, I believe it is

3    correct to say that he has not had contact with any members

4    of his family for three years as opposed to seven months.

5            THE DEFENDANT:  Up to seven years, I haven't

6    talked to my family.

7            THE COURT:  He has not had any contact with any

8    family members in the last -- well, but he has talked to

9    them in the last few years.

10           MS. ROLAND:  Yes, for the first seven years, he

11   had no contact with his family.  Their letters were

12   returned.  His letters were not received.  And he was not

13   able to talk to them on the phone.  For the last three

14   years, he has been able to speak with them.

15           THE COURT:  Can he write?

16           MS. ROLAND:  Yes.

17           THE DEFENDANT:  Almost one and half years has been

18   that I'm in contact with my family, in the past one and a

19   half years, I've been able to talk to my family, to talk to

20   them.  But before that, I was not able to talk to my family.

21   It was nine years before I could talk to them or contact

22   them.  But the past one and a half years, I've been able to

23   talk to, and to contact them.

24           THE COURT:  Do you still want three years in

25   paragraph 70?

1          MS. ROLAND:  Yes.

2          THE COURT:  We could say the last several years.

3          MS. ROLAND:  That's fine. Okay.

4          THE COURT:  Instead of seven.

5          Okay, Ms. Brandon?

6          MS. BRANDON:  I have it, Your Honor.

7          THE COURT:  Okay.  And the last paragraph 115, I

8   will deny that.  It may not be a proper statement of the law

9   but that happens to be what probation says, so we'll leave

10  it as is.

11          All right, I have read everybody's pleadings on

12  sentencing.  If you have anything to add, we will hear from

13  counsel and then from Mr. Bagcho.

14          Mr. Bagcho, you must realize you must speak slowly

15  and I can only give you a limited amount of time because we

16  don't have the phone lines for that long and our interpreter

17  can't interpret for very long by regulation.

18          So you will be able speak last after counsel.

19          Ms. Perry?  Slowly.

20          MS. PERRY:  Yes, Your Honor.  I will keep my

21  comments very brief given the findings that you've already

22  made at the 2017 sentencing hearing.  And I would remind

23  this Court that this defendant's operation was extensive.

24  He was running an enormous operation with global reach.

25          He had his own chemist.  He was about as close as

1   you can get to the source of the drugs.  That's reflected in

2   the extraordinarily high purity that we saw in the samples

3   in this case, purity of 85 percent, when a typical street

4   value is five to 10.

5           The defendant was really the leader of this

6   organization.  He had multiple people and in multiple

7   countries under him, working for him.  The scope and the

8   scale was staggering, even without considering Qari's

9   testimony.  You have a recorded call with Yaseen, Captain

10  Yaseen, discussing sending over 100 kilograms to the United

11  States.  You have the pre-conspiracy conduct, which is

12  relevant conduct here, where Farid testified to the multiple

13  opium transactions, 101 in 18 months at a drug market in

14  Afghanistan.  He had multiple destination countries.  Again,

15  we don't know that from Qari; we know that from the

16  undercover police officer with whom Bagcho spoke.

17          Again, we have the letters.  I understand that

18  Your Honor has not relied on those to calculate quantity in

19  terms of guidelines, but we would encourage the Court to

20  consider them as relevant conduct as to the overall scope

21  and scale of this operation.

22          Finally, we would remind this Court that the

23  defendant bribed public officials in order to continue his

24  enterprise.  Again, we don't know that from Qari; we know

25  from the undercover officer to whom Mr. Bagcho made those

1    statements.  He threatened the violent death of Qari, the

2    cooperating witness.  And again, we don't know that from

3    Qari; we know that from the recorded conversations.

4            And finally, we know that heroin and opioids are

5    some of the most destructive substances out there.  They

6    destroy homes, they destroy communities, they destroy lives.

7    So this defendant's conduct is serious.  He was a leader.

8    His scope was enormous.  And we would ask you for those

9    reasons to sentence him to the high end of guidelines.

10           THE COURT:  Ms. Roland?

11           MS. ROLAND:  Your Honor, with regard to the

12   government's argument concerning the purity of the heroin

13   that was seized, that is probative of the defendant's role

14   in the chain of distribution according to the sentencing

15   guidelines.  And that has been accounted for in the

16   adjustment for his role in the offense and should not be

17   counted against him twice.

18           There is absolutely no risk that Haji Bagcho, at

19   this point in his life, at 78 years old, who is very ill,

20   who has serious illness, is at risk for exporting heroin.

21   The message has been sent, not only to him, but to any other

22   would-be heroin traffickers in Afghanistan.  More time in

23   prison for Haji Bagcho will not change that message.

24           If anyone ever learned a lesson, it is Haji

25   Bagcho.  He was snatched from home and flown across the

1   world to face charges that he never dreamed possible back in

2   Afghanistan.  He will not be making that mistake again.  His

3   conduct in 11 years has been perfect.  His conduct as a free

4   person, cared for in his home, in Afghanistan, will also be

5   perfect.

6        The Court has read the medical records and

7   extensive briefing on Haji Bagcho's medical condition.  I

8   find it extraordinary that the government was in the

9   position of having to conceded that there are extraordinary

10  and compelling reasons for a sentence reduction.  Those

11  words that Congress used have meaning that we commonly give

12  them, extraordinary and compelling.

13       Although the Court has denied his motion for

14  compassionate release, the same reasons, those extraordinary

15  and compelling circumstances are a reason for a sentence

16  here.

17       As the Court knows, he has congestive heart

18  failure, I'm not going through the litany of diseases.  The

19  Court has heard them.  He has had a stroke and a heart

20  attack.  The time that he has spent in prison already, and

21  any time he might spend in the future, has been more

22  difficult and will be more difficult than for other

23  prisoners.  He has spent years and years in solitary

24  confinement.  He could never be released to a halfway house.

25  He spent years without communications with his family.  He

1  isolated because he doesn't speak English and very few

2  people speak Pashto.  He is not eligible for certain

3  benefits because he is not a U.S. citizen.  He won't be

4  eligible for new earned time credits, if the Court continues

5  to imprison him, the people around him will earn 10 days off

6  of every 30 days by programming with earned time credit and

7  he will not.  He won't be eligible for a halfway house.  He

8  will never be able to moved to a minimum security prison.

9          For all of those reasons and all the reasons

10  stated in our motion and in the compassionate release

11  motion, we ask the Court to send Haji Bagcho back home to

12  his family where they will care for him.

13          THE COURT:  Now Mr. Bagcho, I am not here to

14  revisit all the facts of the case.  I know from prior

15  sentencing, as well as your letter, that you do not agree

16  with the jury's finding.  But the Court is proceeding on

17  Counts I and II to resentence you.  And I am not able to,

18  nor will I, go back to consider whether the jury did right

19  or not.  So, if you would like to address the Court about

20  sentence, please do.

21          THE DEFENDANT:  Thank you, Your Honor.  I wish you

22  a good health.

23          THE INTERPRETER:  I have difficulty hearing him.

24  I'm not hearing him very well.  I cannot hear him very

25  well, I'm sorry.  I have problems with the audio and I don't

1   know how to fix it.

2          (Pause)

3          THE DEFENDANT:  Thank you, Your Honor.  It was

4   very kind of you.  I'm grateful.  You know my case very

5   well.  The government has accused me with many counts, DEA

6   has personal animosity toward me, they have personal

7   animosity with me, Yaseen and others.  They filed a lot of

8   case against me and finally they sent me to the United

9   States.

10         They have filed, they charged me with a lot of

11  wrongdoings and they blacklisted me from the Afghanistan

12  Government and also to the United States Government.  They

13  believe those people who have not seen me, they did not see

14  me, they don't know me.  But they believe and they put their

15  trust in those people.

16         When they arrested me, they take me to the

17  Afghanistan D.A. and they also introduced me to the United

18  States authorities and they put -- they took me to the

19  Afghanistan Court.

20         The Afghanistan Court saw the evidence, they asked

21  Afghan notables and finally they decided that the charges

22  against me were false.  The Afghan Court told the

23  prosecutors that they have no case, that this is a drama,

24  that they have no evidence and they arrested the wrong

25  person, an innocent.

1     THE COURT:  Sir, can you tell Mr. Bagcho that, as

2 I said, I need to know things that are relevant to

3 sentencing.  I am not here sitting as the jury.  I'm bound

4 by the jury's decision.

5     THE DEFENDANT:  Your Honor, as you know, even the

6 U.S. Government and the prosecutor denied the things that

7 were said about me.  Even in the United States, I was --

8 when they saw the evidence, they said these things are not

9 correct.

10     Your Honor, you know, in front of you, Yaseen has

11 said that he lied, that he asked you for forgiveness, Yaseen

12 and the Court.  So you know the case and you know that those

13 witnesses were wrong.  They were not reliable people.

14     THE COURT:  Can you ask Mr. Bagcho, when he goes

15 home, where will he stay and who will take care of him?

16     THE DEFENDANT:  Your Honor, when I go back to

17 Afghanistan, I will stay in Kabul in my home with my family.

18 I have a home in Kabul and I also have a home in Jalalabad

19 where my old father is living.  I have no intentions to go

20 any place else but stay with my family, and in particularly

21 with my old father.

22     THE COURT:  How old is your father?

23     THE DEFENDANT:  Your Honor, my father is around

24 110 or 109 years old.  He is very sick.  He is laying down

25 on the bed.  My wish is to go there, to help him and help

1   him in his last year or days while he is sick, he is very

2   sick.

3            THE COURT:  And what happened to the property in

4   Kandahar?

5            THE DEFENDANT:  Your Honor, I do not have any

6   property in Kandahar.  But I do have property in Nangarhar,

7   not in Kandahar Province, but in Nangarhar Province.

8            THE COURT:  Okay.  What happened to that?

9            THE DEFENDANT:  Your Honor, the prosecutor showed

10  footage of my house in Jalalabad, that's our house.  There

11  are farmers living there.  My father is also living there.

12  My stepbrothers are living there, that stay with us.

13            THE COURT:  What about the place --

14            Ms. Perry, was the compound where the DEA went in

15  Kandahar or Nangarhar?  Maybe I was mistaken.

16            MS. ROLAND:  Your Honor, it was in Nangarhar and

17  it would have been Larco (ph) Village.

18            THE COURT:  Well then my statistics were wrong.

19  As to Kandahar, they may not be relevant.  But they have

20  statistics on Nangarhar as well.

21            What happened to that property there, Mr. Bagcho?

22            THE DEFENDANT:  Your Honor, the home that they

23  showed is in a faraway farm.  But my family, the main house

24  is in Nangarhar City, in Jalalabad City, the house that they

25  showed is in a faraway farm, they call it Bondah (ph), in

1    that area.  There are farmers living there.  But our main

2    house is in Nangarhar City, Jalalabad.  And the house is

3    still with us.

4              THE COURT:  What about the farm?  Is it still

5    owned by your family?

6              THE DEFENDANT:  Your Honor, that's the house where

7    one of my brothers lives in.  The rest are -- we are four

8    brothers and nine sisters, but we are in Jalalabad in the

9    city.  One of our brothers lives there with the farmers.

10   That's far away from the city in an isolated place.

11             MS. PERRY:  Your Honor, I apologize for

12   interrupting.  I'm not sure the defendant was sworn.

13             THE COURT:  You are probably right.

14             Gwen, can we swear the defendant?

15             THE DEPUTY CLERK:  We don't normally swear the

16   defendant, Your Honor, when you're asking questions of the

17   defendant.  We swear the interpreter.  So I'm just trying to

18   figure out why counsel feels like the defendant needs to be

19   sworn.

20             MS. ROLAND:  I don't think that the defendant

21   needs to be sworn to answer the Court's questions.  I have a

22   little bit of a concern about the interpreting.  I would ask

23   Haji Bagcho, if he has more to say, to please speak in short

24   bursts so that it can be accurately interpreted.  I'm

25   hearing long sentences and I think the interpretation is

1  just giving us the gist of what he said instead of

2  word-for-word interpretation.

3         THE COURT:  So he needs to speak in short

4  sentences and let the interpreter translate.

5         THE INTERPRETER:  Your Honor, I'm trying to get

6  the gist, that's true, the gist of it.  And I'm trying to,

7  because he goes on, there is stuff that is repetitive.  And

8  I don't want to be repetitive and just try to get the gist

9  of his statement and give it back to you.

10        THE COURT:  Okay.  It is important that you try to

11  give us word-for-word.  And he has to stop.  He can't speak

12  so much.  It's okay.  I understand it's a problem.

13        Ms. Roland, Jalalabad is in Pakistan, correct?

14        MS. ROLAND:  No, Jalalabad is in Afghanistan.  And

15  that is where the DEA had an office at the air base.

16        THE COURT:  Okay.

17        MS. ROLAND:  The compound that you are thinking of

18  was in Larco (ph) Village, which was pretty rural area.

19        THE COURT:  Okay.  What province is Jalalabad in?

20        MS. ROLAND:  Nangarhar.

21        THE COURT:  Okay.  My mistake.

22        Okay, Mr. Bagcho, who lives at the house in

23  Jalalabad?

24        MS. ROLAND:  Your Honor, are you asking him about

25  the compound where, that the DEA raided?

1          THE COURT:  No, he answered that.  He said his

2     brother.  I just wonder, he said he is going home to Kabul

3     and Jalalabad.  And I just want to know who lives in both

4     places.

5          MS. ROLAND:  Okay.  Thank you.

6          THE DEFENDANT:  In both Kabul and also in

7     Jalalabad, my sons are living in both houses.

8          THE COURT:  What about his wives?  Where do they

9     live?

10          THE DEFENDANT:  My wives are moving to Kabul

11     because Jalalabad is getting very warm at this time.  They

12     are moving to Kabul to live in Kabul during the summertime.

13          THE COURT:  Is there anything else that does not

14     relate to relitigating the case that he wishes to bring to

15     my attention?

16          THE DEFENDANT:  What can I say, Your Honor?  I'm

17     not guilty.  I haven't done anything wrong.  What can I say?

18          THE COURT:  Okay.  The Court will now proceed to

19     sentencing.  The Court intends to both depart and to vary.

20     I think a sentence of another 10 years is unnecessary and

21     doesn't serve the purposes of 3553(a).

22          First, there is no question that he is elderly and

23     infirmed, the medical records support this.  So the Court

24     will depart under 5(h)1.1, 5(h)1.4.  In terms of variance,

25     the Court notes a host of factors.  He has had an extremely

harsh incarceration, much more harsh than is often the case
with people serving lengthy sentences.  He has been in
solitary confinement for nine years.  He has had at least
nine years without communication with family, whether by
letter or phone.  He has not seen any family members since
2009.  And most importantly, he is not eligible for minimum
security, home confinement, halfway house.  He is not
eligible for certain benefits, his good time is only 42 days
a year, unlike most prisoners.  And I believe it is
inevitable that he will have to spend some period of time in
detention before he ever gets back to Afghanistan.

   The Court would also note that he has had no
disciplinary infractions.  He has taken some advantage of a
GED course, and therefore, I am entitled to consider his
post sentence rehabilitation.

   The Court is, nevertheless, going to, as I say,
depart and vary.  On Counts I and II, it imposes 192 months
concurrent.  There is required by statute a five year term
of supervised release.

   Does he still have to pay special assessments?  Do
they take it out of prison funds by now?  Sherry, do you
know?

   MS. BRANDON:  Yes, Your Honor, they do take it out
of prison funds but I don't know currently what his balance
is.  So it may just be appropriate to say that, if you

1   impose the $200 special assessment, but of course, if he has

2   already satisfied that, then he is no longer under the

3   obligation.

4           THE COURT:  All right.  The Court has to impose

5   the $200 as required by 18 USC 3013.

6           Now, I don't know that he will be on supervised

7   release in this country.  But to the extent he ever is, I'm

8   required to impose a term of five years again on Counts I

9   and II to run concurrently.  While on supervised release, if

10  that occurs, he is not to commit any further criminal

11  offenses.  He is not to unlawfully possess a controlled

12  substance or firearm.  He is to cooperate in the collection

13  of DNA.  And I have no reason to believe he takes, that the

14  drug condition applies here.  I don't know that there is any

15  evidence that he takes drugs other than medical treatment.

16          I think the more likely plan will be that ICE will

17  pick him up when he is released.  His release date, he will

18  be approximately 80 years old.  And he should be released

19  some time around September 2022.

20          As part of his conditions of release, he must

21  surrender to U.S. Immigration and Customs Enforcement and

22  follow their instructions and reporting requirements until

23  any deportation proceedings are completed.

24          If you are ordered deported from the United

25  States, you must remain outside of the United States, unless

1    legally authorized to reenter.  If you reenter the United

2    States, you must report to a probation office within 72

3    hours after you return.  The probation office shall release

4    the presentence investigation report and/or judgment and

5    commitment order to ICE to facilitate any deportation

6    proceedings.

7              Furthermore, the Court finds that you do not have

8    the ability to pay a fine.  And will, therefore, waive the

9    imposition of a fine.  $200 will be payable to the Clerk of

10   Court to be taken from prison funds.

11             The Court informs you, Mr. Bagcho, that you have

12   the right to appeal the sentence in this case.  You've

13   already appealed the verdict.

14             If you choose to appeal, you must file the appeal

15   within 14 days after judgment is entered, which should be in

16   the next day or two.  And if you want to appeal, you must

17   tell Ms. Roland.  She can file the notice for you.  If you

18   are unable to afford the cost of an appeal, you may request

19   permission from the Court to file an appeal without cost to

20   you.

21             Do you understand those rights, sir?

22             THE INTERPRETER:  He is asking me to clarify the

23   situation.

24             THE COURT:  I will repeat.  He has the right to

25   file an appeal from the sentence.  If he chooses to appeal,

1   the notice has to be filed within 14 days after the Court

2   enters judgment in writing.

3          He can ask Ms. Roland to notice the appeal if he

4   wants to appeal.  If he cannot afford the cost of an appeal,

5   he can request permission to file without cost to him and he

6   can request permission from the Court to file the appeal

7   without cost if he cannot afford a counsel.  And I want to

8   know whether he understands the right that he has to file an

9   appeal from the sentence.

10          THE DEFENDANT:  What is my sentence?  I do not

11   know my sentence.  What is my sentence to?

12          THE COURT:  The sentence was 192 months

13   concurrent, meaning that it will go at the same time on

14   Counts I and II.  He gets credit for time served back to

15   January 2009.

16          Does he have a question?

17          THE INTERPRETER:  He is asking how many more

18   months will I stay in the jail.  Am I free or will I still

19   be in the jail?

20          THE COURT:  I don't have the exact date that you

21   will be released.  But it should be, Ms. Roland can correct

22   me, but it should be around September 2022.  Two years.

23          Is that right, Ms. Roland?

24          MS. ROLAND:  I'm not exactly sure but I will do

25   the calculation, arrange for a legal call and also e-mail

1    his family.

2              THE COURT:  Okay.

3              THE DEFENDANT:  This seems like I'm not forgiven,

4    leniency, it seems like I have to be here, be in the prison

5    for almost two more years.

6              THE COURT:  Yes, that is true, except the

7    guideline range, Sir, would have put you there, the high end

8    would have put you there until 2030 I believe.  So

9    basically, on the high end, it's at least eight years less.

10   And on the low end, it's three years less.  So the Court's

11   departure and variance is substantial in your case, given

12   that the government was asking to keep you in for another 10

13   years.  So there has been substantial leniency.

14             But I need to make sure that you understand your

15   right that you can appeal and you need to talk to counsel.

16   She will arrange that so she knows whether you want to

17   appeal or not.  But there has been considerable leniency

18   shown here.

19             Is there anything, does he have any other

20   questions please?

21             THE INTERPRETER:  He is asking about 192 months

22   that already he spent 192 months.  Your Honor, in the jail,

23   and --

24             MS. ROLAND:  Your Honor, I am very happy to

25   arrange for a legal call with him tomorrow where I can

1    explain the Court's ruling.

2            THE COURT:  Right.  He does get credit for all the

3    time he has been there, plus some good time.  So it's not an

4    additional 192 months.  You'll have to subtract the 11 years

5    and four months that he has served.  But can the interpreter

6    kindly ask him if he understands his right to appeal?

7            THE INTERPRETER:  Your Honor, he is asking me to

8    tell him stuff.  I'm just asking him whether he understands

9    that he can appeal or not.

10           THE COURT:  All we need to know is if he

11   understands his right that he can appeal and he can tell his

12   lawyer whether he wants to.  She will call him tomorrow.

13           THE DEFENDANT:  Yes, Your Honor, I understand

14   that.

15           THE COURT:  All right.  I think that we are

16   getting cut off here.

17           Ms. Roland, is anything else for you?

18           MS. ROLAND:  No, Your Honor.

19           THE COURT:  For the government?

20           MS. PERRY:  No, Your Honor.

21           THE COURT:  All right.  Mr. Bagcho, your lawyer

22   will be in touch tomorrow.  And you can discuss any possible

23   appeal if you want.

24           If there is nothing further, the Court thanks all

25   for your patience and hope you have a good day.  Thank you.

1          (Whereupon, at 3:28 a.m., the hearing concluded.)

2

3

4

5

6                    CERTIFICATE OF REPORTER

7              I, Lisa Walker Griffith, certify that

8    the foregoing is a correct transcript from the record of

9    the remotely reported proceedings in the above-entitled

10   matter.

11                    Please Note: This hearing was held in

12   compliance with the COVID-19 pandemic and the standing orders

13   of this court, and is therefore subject to the

14   technological limitations of court reporting remotely,

15   including static, signal interference and other restrictions.

16

17

18

19   _____  10-6-2020
     Lisa Walker Griffith, RPR              Date
20

21

22

23

24

25